UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| DOROTHY HALE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 10-13-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION &** |
| UNITED STATES DEPT. OF | ) | **ORDER** |
| VETERANS AFFAIRS, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

The question here is how to interpret the testator's request that a portion of her estate be given to a medical center "to be used exclusively for neurological and spinal cord research" and nothing else. R. 20, Attach. 1 at 4-5. The center is not currently conducting the latter, and the plaintiff therefore says the gift fails. But the plaintiff, executrix of the estate, takes an unreasonably narrow view of the text of the codicil. And Kentucky law applies a presumption in favor of upholding the bequest—particularly because it is charitable—and even permits swapping "or" for "and" to effectuate that presumption. Accordingly, the defendant's motion for summary judgment is granted.

### BACKGROUND

When she died, Ocie McGeorge's will—as amended by codicil—bequeathed a portion of her estate to the Research Department of the Veterans Administration Medical Center, R. 20, Attach. 1 at 4-5, where her husband previously received treatment for Parkinson's disease, R. 18, Attach. 1 at 9. Her will specified that the bequest was "to the Research Department of the

Veterans Administration Medical Center, 1101 Veterans Drive, Lexington, Kentucky 40502-2236 to be used exclusively for neurological and spinal cord research at this facility and in no event shall this bequest be used for other purposes or commingled with any other funds[.]" R. 20, Attach. 1 at 4-5.

While the VA Medical Center does do neurological research, including research on Parkinson's disease, R. 15, Attach. 3 at 18-19, it is not performing any spinal cord research "right now." *Id.* at 16. The center apparently last conducted spinal cord research "quite a few years ago." *Id.*

## DISCUSSION

The plaintiff seeks a judgment declaring that the gift to the VA Medical Center fails because use of the word "and" in the bequest requires that the gift be made only if the center is conducting both neurological and spinal cord research at this very moment. This is a question for the Court, *Cornelison v. Million*, 124 S.W. 366, 368 (Ky. 1910) ("The construction of the will . . . was properly for the court[.]"), and the Court concludes the plaintiff is wrong.

Most importantly, the plaintiff's construction of the text of the codicil is not a "reasonable" one. *Corn v. Roach*, 9 S.W.2d 1074, 1074 (Ky. 1928). The codicil does not simply say the VA Medical Center must use the gift for "neurological and spinal cord research." Instead, the full sentence adds that those purposes must be "exclusive," and that "in no event shall this bequest be used for other purposes or commingled with any other funds." From this, the meaning of the codicil is clear. The phrase "neurological and spinal cord research" simply defines the universe of potential uses. Consider an example: A father gives his son a few dollars

2

and says "you can buy apples and oranges, but nothing else." The most reasonable construction of this is not that the son must buy both apples and oranges. Rather, it simply means that the boy's options include only apples and oranges, and if he buys either one or both he does not violate his dad's dictate.

The plaintiff responds that the specificity in the text—identifying the type of research to be performed—when compared with the generality of a similar gift to the Cardinal Hill Rehabilitation Hospital, supports her reading. R. 21, Attach. 1 at 5. She clarifies that this signals the testator's relative mistrust that the VA Medical Center would use the money appropriately, *id.*—the implication apparently being that the testator wanted strict, disciplinarian enforcement of the literal terms of the will against the VA Medical Center. This is unconvincing, though. Requiring that the VA Medical center perform "neurological and spinal cord research" is not a particularly specific instruction. As one center employee reveals, the list of possible "neurological" projects is long—extending far beyond the Parkinson's that afflicted the testator's husband. R. 15, Attach. 3 at 18. But setting this aside, it is unclear why the plaintiff believes the Court's reading is inadequately restrictive. So read, the will would still place limits on how the center can spend the money—it can spend it on some kinds of research, but not others.

With the text of the will a "reasonably clear expression of intent . . . the inquiry need go no further." *Clarke v. Kirk*, 795 S.W.2d 936, 938 (Ky. 1990). But even if the text was unclear, the rules of construction cut against the plaintiff's bequest-defeating interpretation. "A construction that will sustain a devise is preferred to one that will defeat it, unless the latter is required by the language of the will." *Shavers Adm'r v. Ewald's Ex'r*, 134 S.W. 906, 908 (Ky.

3

1911). Similarly, where "two possible constructions of a will present themselves, the one which results in complete testacy should prevail." *Georgetown College v. Alexander*, 140 S.W.3d 6, 13 (Ky. App. 2003); *see also Goodloe's Trustee and Adm'r v. Goodloe*, 166 S.W.2d 836, 840 (Ky. 1942) ("If the language of the will should be considered to be ambiguous in this respect, the court would incline to a construction which renders the will valid[.]"); *Estate of Power v. Cooper*, No. 2005-CA-000691, 2006 WL 1291445, at *1 (Ky. App. May 12, 2006) ("Every reasonable presumption will be indulged against partial intestacy[.]"). That presumption is particularly strong in this case, as the putative gift is charitable. *See, e.g., Harwood v. Dick*, 150 S.W.2d 704, 708 (Ky. 1941); *Kentucky Christian Missionary Soc. v. Moren*, 102 S.W.2d 335, 336 (Ky. 1937).

With this presumption in mind, it is clear that the codicil can be read to uphold the charitable gift to the VA Medical Center. In fact, Kentucky law allows courts to swap "and" and "or" to uphold the presumption against intestacy, *McKee v. Johnson*, 312 S.W.2d 902, 903 (Ky. 1958)—a rule that lends further support to the Court's reading. *See also Bd. of Nat'l Missions of Presbyterian Church v. Harrel's Trustee*, 286 S.W.2d 905, 906-907 (Ky. 1956); *Hayes v. Hayes*, 159 S.W. 544, 545 (Ky. 1913); *Shavers*, 134 S.W. at 907-08; *Williams v. Williams*, 16 S.W. 361, 363 (Ky. 1891). In *McKee*, for instance, the testator left all his "property or cash or savings accounts" to his wife, but the Court held that this did not mean the wife had to choose among the types of property. 312 S.W.2d at 902-903. It explained that there is a presumption against intestacy, and it was appropriate to read "or" as "and" to permit complete testacy in that case. *Id.* at 903. Alternatively, the Court could reasonably interpret the word "and" as simply

4

requiring the medical center to use the gift for both types of research, either now or at some point in the future.

The plaintiff answers first with a case with no apparent relevance here, *Defenders of Furbearers v. First Nat'l Bank & Trust Co.*, 306 S.W.2d 100, 102 (1957). R. 21, Attach. 1 at 4-5. She seems to read the case as requiring a narrow, technical reading of the will because it is a specific charitable bequest. But the case says nothing of the sort. Instead, it merely holds that, for a court to apply the doctrine of cy pres, it must find that the testator was more intent on a "general charitable purpose than for the benefit of a particular charity." *Furbearers*, 306 S.W.2d at 103. The plaintiff adds that the external circumstances surrounding the codicil favor her reading. She says the codicil should be interpreted to require both ongoing neurological and spinal cord research as a prerequisite to the gift because spinal cord research was "equally" important to the testator, whose niece suffered a spinal cord injury. R. 21, Attach. 1 at 2, 5.

The first problem with this, however, is that it is not at all clear the Court can even consider facts outside the four corners of the will—an issue the parties have not addressed. In Kentucky, courts can only consider extrinsic evidence to resolve latent ambiguities, ambiguities that "do not appear on the face of the words used, and [are] not known to exist until the words are brought in contact with the collateral facts." *Thornhill Baptist Church v. Smither*, 273 S.W.2d 560, 562 (Ky. 1954). A common example is an instance where a will identifies a beneficiary by a particular name, but that same name could, it turns out, apply to multiple people. In contrast, courts cannot consider extrinsic evidence to resolve patent ambiguities, ambiguities that do appear on the face of the will. *Roberts v. Roberts' Ex'r*, 186 S.W.2d 801, 803 (Ky.

5

1945).

If there is any ambiguity in this case, it appears to be patent. Ambiguity about the meaning of words used in a will—here, largely the word "and"—is typically patent. *See, e.g., Jennings v. Jennings*, 187 S.W. 459, 462 (Ky. 1945) ("What the testator meant by 'funds' and 'above heirs' presents patent but not latent ambiguities."); *Smith v. Coxe*, 191 S.E. 422, 426 (S.C. 1937) (holding that ambiguity is patent if language has a "double meaning"); *Zilwaukee Tp. v. Saginaw Bay City Ry. Co.*, 181 N.W. 37, 39-40 (Mi. 1921) (holding that patent ambiguity exists "by reason of inconsistency, obscurity, or an inherent uncertainty of the language adopted" and where the words used "convey no definite meaning or a double one"). It is true that, in 1838, the court in *Lexington & O.R. Co. v. Ormbsy*, 1838 WL 2306, at *1 (Ky. 1838) held that there may be some instances where "words used have a settled meaning, but admit of two interpretations, according to the subject matter in the contemplation of the parties," and the resultant ambiguity is latent. The *Ormsby* court elaborated, giving the example of the word "freight"—which "has a determinate and well understood abstract meaning," but could mean goods on a ship, or an interest in the earnings of the ship depending on the particular understanding of the parties. *Id.* But really this is no different from the common example of a latent ambiguity—a will that uses a precise name which could, it turn out, apply to multiple people by the same name. The ambiguity in this case is not so much about tying an abstractly well-defined word to a particular object or person in the world, but rather about trying to determine the relationship between several words on the face of the will—"neurological," "and," "spinal cord research," and the rest of the sentence. That is, this is a questions of construction,

6

not identity. *See Lane v. Coe*, 136 S.E.2d 269, 273 (N.C. 1964) ("A patent ambiguity raises questions of construction; a latent ambiguity raises questions of identity.").

The only indication that such an ambiguity might be latent comes from *McKee v. Johnson*. There, while holding that it was permissible to swap "and" for "or" to construe the will as giving all the testator's property to his wife, the Court mentioned that "[t]he circumstances surrounding the [testator and his wife] indicate also that [the testator] intended to vest in his wife absolute title to all of his property, real and personal. The property referred to above was acquired through the joint efforts of the couple during a long but childless marriage." 312 S.W.2d at 903. But this point seems to be dicta, as the court concluded with the rule that "[t]here is a presumption against intestacy, and when two possible constructions of a will present themselves, the one which results in complete testacy should prevail." *Id.*

But even if there is a latent ambiguity in this case, the defendants would still be entitled to summary judgment. To survive summary judgment "there must be evidence on which the [fact finder] could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). Despite the strong rules-of-construction-based presumption against the plaintiff's interpretation, she has produced not a shred of evidence that the testator intended the bequest to fail unless the VA Medical Center was conducting both neurological and spinal cord research at the time of the bequest. Instead, she has shown only that both neurological and spinal cord research were of interest to the testator. This does nothing to tip the balance set by the presumption in favor of upholding this charitable bequest.

## CONCLUSION

Accordingly, it is **ORDERED** that the defendant's motion for summary judgment, R. 23, is **GRANTED**, and the plaintiff's motion for summary judgment, R. 21, is **DENIED.**

This the 6th day of December, 2010.

Signed By:
*Amul R. Thapar* AT
United States District Judge